(136 P.3d 945)

No. 94,432

STATE OF KANSAS, *Appellee*, v. ANTHONY B. BURTON, *Appellant*.

Opinion filed June 9, 2006.

*Janine Cox,* capital appellate defender, for appellant.

*Lesley A. Isherwood,* assistant district attorney, *Nola Tedesco Foulston,* district attorney, and *Phill Kline,* attorney general, for appellee.

Before MCANANY, P.J., MALONE and CAPLINGER, JJ.

MALONE, J.: Anthony B. Burton appeals his conviction and sentence for one count of aggravated robbery. Burton claims the trial court erred in instructing the jury on aiding and abetting aggravated robbery. Burton also claims there was insufficient evidence to support his conviction. Finally, Burton claims the trial court erred by basing his sentence on a criminal history score that was not proved to a jury beyond a reasonable doubt. We affirm.

On October 24, 2004, Jason Vaughn stopped at a bank to cash a $220 check on his way to work. Vaughn received the entire amount in denominations of $10s and $20s, and he left the cash in the bank envelope, along with his driver's license, on the passenger's seat of his car. He placed his wallet on top of the envelope and proceeded to work. Vaughn was unaware that he was being followed by another car occupied by Burton and driven by Eric Pettit.

Vaughn pulled into the parking lot of his place of employment. Pettit parked on the street. When Pettit exited the car, Burton slid over into the driver's seat. Pettit contacted Vaughn as he stepped from his car and asked Vaughn to show him the stereo equipment in Vaughn's car. However, Pettit ultimately lifted his shirt to display a gun in his waistband, and Pettit informed Vaughn that he wanted the car. Vaughn gave Pettit the keys. Pettit drove Vaughn's car from the parking lot, and Burton followed him in the other car. When Vaughn notified his supervisor that his car had been taken, a co-worker, Glenn Keith, offered to help Vaughn pursue his assailants.

Keith and Vaughn contacted police by cellular phone and started driving in the direction Pettit had fled. When they turned down a side street, they came upon Burton and Pettit standing behind

Vaughn's car with the trunk open. When Pettit and Burton saw Keith's car, they jumped into their original car and Pettit drove off. Keith continued to pursue Pettit and Burton, and Vaughn stayed behind with his car. Vaughn noticed that his wallet and the bank envelope were missing.

Keith remained in contact with police dispatch while he continued to pursue the other car. During the chase, Keith noticed a black object was tossed from the passenger window. He later returned to the location to recover the item and discovered it was Vaughn's wallet. The pursuit concluded when five police officers descended on the area and stopped Pettit and Burton. Vaughn was transported to the area and positively identified Pettit as the man with the gun who took his car, and Burton as the man driving the other car.

A search of the car yielded a loaded gun, $100 in increments of $10s and $20s, Vaughn's driver's license, and other various cards and forms of identification that belonged to Vaughn. Burton was taken into custody and transported to the jail. A search of his person uncovered $120, consisting of six $20 bills.

The State charged Burton with aggravated robbery under the theory that he aided and abetted Pettit in the crime. At trial, Burton admitted that he was the man with Pettit, but he denied knowing about or being involved in the robbery. Burton testified that the money found on his person the day of the arrest was money he had made selling crack cocaine. He denied going through Vaughn's wallet and taking any money. Burton testified that Pettit threw the wallet out the passenger side window during the chase.

A jury found Burton guilty as charged. The trial court imposed a presumptive sentence of 216 months' imprisonment. Burton timely appeals.

### Jury instruction on aggravated robbery

Burton first claims the trial court erred in instructing the jury on aggravated robbery. The trial court modified Pattern Instructions for Kansas—Criminal 3d 56.31 (PIK Crim. 3d 56.31) on aggravated robbery by incorporating aiding and abetting language into the elements instruction. Burton claims this resulted in undue

emphasis on one instruction and focused the jury's attention on Burton's relationship with Pettit rather than his own intentions. Burton argues the trial court should have adhered to the standard PIK elements instruction on aggravated robbery.

"When reviewing challenges to jury instructions, this court must consider the instructions as a whole and not isolate any one instruction. ' "If the instructions properly and fairly state the law as applied to the facts of the case, and a jury could not reasonably have been misled by them, the instructions do not constitute reversible error even if they are in some way erroneous. [Citations omitted.]" ' [Citation omitted.]" *State v. Mays*, 277 Kan. 359, 378-79, 85 P.3d 1208 (2004).

Over Burton's objection, the trial court instructed the jury on aggravated robbery as follows:

"The defendant is charged with the crime of aggravated robbery. The defendant pleads not guilty.
"To establish this charge, each of the following claims must be proved:
"1. That the defendant, *or another for whose conduct he was criminally responsible*, intentionally took property from the person or presence of Jason J. Vaughn;
"2. That the taking was by threat of bodily harm to Jason J. Vaughn;
"3. That the defendant, *or another for whose conduct he was criminally responsible*, was armed with a dangerous weapon; and
"4. That this act occurred on or about the 22nd day of October, 2004, in Sedgwick County, Kansas.
"An object can be a dangerous weapon if intended by the user to convince the victim that it is a dangerous weapon and which the victim reasonably believed to be a dangerous weapon." (Emphasis added.)

The trial court modified PIK Crim. 3d 56.31 by adding the language "or another for whose conduct he was criminally responsible" to the elements instruction on aggravated robbery. The trial court also gave a separate jury instruction on aiding and abetting based on PIK Crim. 3d 54.05. This instruction stated:

"A person who, either before or during its commission, intentionally aids, abets, advises, hires, [or] counsels another to commit a crime with intent to promote or assist in its commission *is criminally responsible for the crime committed* regardless of the extent of the defendant's participation, if any, in the actual commission of the crime." (Emphasis added.)

The use of PIK instructions is recommended because the instructions were developed to bring accuracy, clarity, and uniformity

to jury instructions. They should be the starting point in the preparation of any set of jury instructions. However, "[i]f the particular facts in a given case require modification of the applicable pattern instruction or the addition of some instruction not included in PIK, the trial court should not hesitate to make such modification or addition." *State v. Dunn*, 249 Kan. 488, 492, 820 P.2d 412 (1991).

An argument similar to Burton's has previously been rejected by this court. In *State v. Buhr*, 25 Kan. App. 2d 529, 966 P.2d 690, *rev. denied* 266 Kan. 1111 (1998), the defendant was charged with the sale of marijuana under a theory of aiding and abetting. The trial court added the words "aided and abetted" to the elements instruction on the sale of marijuana. 25 Kan. App. 2d at 531. The defendant argued that the instruction should have simply stated that the defendant sold or delivered the drugs and that the aiding and abetting language should not have been incorporated into the instruction. She argued that the separate jury instruction on aiding and abetting at PIK Crim. 3d 54.05 was sufficient to explain the State's theory of the case. This court rejected the defendant's argument and concluded: "The fact that the trial court altered the instructions explaining the elements of the crime of the sale of marijuana to reflect the State's theory of the case and to assist the jury in examining the State's case was harmless error, if error at all." 25 Kan. App. 2d at 532.

*State v. Green*, No. 90,999, unpublished opinion filed November 12, 2004, is even closer to the facts presented in this case. In *Green*, the defendant was charged with second-degree murder under an aiding and abetting theory. The trial court added the language "or another for whose conduct she [the defendant] is criminally responsible" to the elements instruction, just as the trial court did in Burton's case. Slip op. at 7. This court rejected the defendant's argument that the trial court improperly modified the standard PIK instruction for second-degree murder. This court held the modification was not erroneous because the instruction accurately stated the law and was consistent with the evidence. Slip op. at 8.

Here, the trial court's jury instructions properly and fairly stated the law as applied to the facts of the case. In fact, Burton makes no argument that the instructions inaccurately stated the law. The

instructions correctly set forth the State's theory that Burton aided and abetted the aggravated robbery of Vaughn. Although the trial court was not required to modify the elements instruction on aggravated robbery, we conclude the modification, when given in conjunction with the aiding and abetting instruction at PIK Crim. 3d 54.05, clarified to the jury that Burton was being charged as an aider and abettor rather than as a principal actor in the crime. The trial court committed no error in instructing the jury on aggravated robbery.

### Sufficiency of the evidence

Burton also claims the evidence was insufficient to convict him of aggravated robbery. Burton argues the State did not present any direct evidence that he intended to aid Pettit in committing the crime. He contends his involvement with Pettit was limited to simply being in the wrong place at the wrong time.

" 'When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all of the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Calvin*, 279 Kan. 193, 198, 105 P.3d 710 (2005).

Here, the evidence was undisputed that Burton drove the getaway car from the scene of the robbery. Burton was unable to provide an explanation for his own testimony that he slid over to the driver's side of the car while Pettit was talking to Vaughn outside his place of employment. The jury could infer intent from this action because there would have been no reason for Burton to move into the driver's seat unless he did not expect Pettit to return to drive the car. After the robbery, when confronted behind Vaughn's car, Burton continued to flee with Pettit. During the chase, Vaughn's wallet was thrown from the fleeing car from Burton's side of the car. The State presented evidence that Vaughn had $220 cash taken from his car. The money recovered from the car, coupled with the money found on Burton's person, amount to $220.

Burton is essentially asking this court to reweigh the evidence, which we decline to do. It is the jury's prerogative to decide the credibility of witnesses, the weight to be given evidence, and the reasonable inferences to be drawn from the evidence. *State v. Knighten*, 260 Kan. 47, 53, 917 P.2d 1324 (1996). While much of the evidence in Burton's case was circumstantial, there was sufficient evidence from which the jury could have inferred Burton's criminal intent. A conviction of even the gravest offense may be sustained by circumstantial evidence. *State v. Holmes*, 278 Kan. 603, 632, 102 P.3d 406 (2004). When the evidence is considered in the light most favorable to the State, the jury had sufficient evidence to reasonably conclude Burton was guilty of aggravated robbery.

### Sentencing issue

Finally, Burton claims his constitutional rights were violated when the trial court based his sentence on a criminal history score that was not proved to a jury beyond a reasonable doubt. Burton claims this violates *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

This issue is controlled by the Kansas Supreme Court's decision in *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002), which holds that *Apprendi* does not apply where the defendant's sentence is based in part upon the defendant's criminal history score under the Kansas Sentencing Guidelines Act. This court is duty bound to follow Kansas Supreme Court precedent, absent some indication the court is departing from its previous position. *State v. Beck*, 32 Kan. App. 2d 784, 788, 88 P.3d 1233, *rev. denied* 278 Kan. 847 (2004). We have no indication that the court is departing from the precedent set in *Ivory*. Accordingly, Burton's challenge to his sentence is without merit.

Affirmed.